UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| LATASHA DANAY HAYNES, | ) | No. ED CV 12-2208-PLA |
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | |
| Defendant. | ) ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on December 20, 2012, seeking review of the Commissioner's denial of her application for Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on January 4, 2013, and January 11, 2013. The parties filed a Joint Stipulation on August 19, 2013, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on September 28, 1990. [Administrative Record ("AR") at 201.] She testified that she completed high school and received a certificate of completion [AR at 32], and represents that she has never worked. [AR at 177.]

On August 4, 2009, plaintiff filed her application for Supplemental Security Income payments [AR at 10, 42, 153-59], alleging that she has been disabled since September 2, 1993. [AR at 10, 153.] After plaintiff's application was denied initially and upon reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 44-57.] A hearing was held on September 14, 2011, at which time plaintiff appeared with her attorney and testified on her own behalf. [AR at 29-41.] A vocational expert also testified. [AR at 29, 39-40.] On October 25, 2011, the ALJ determined that plaintiff was not disabled. [AR at 7-17.] When the Appeals Council denied plaintiff's request for review of the hearing decision on September 13, 2012 [AR 1-4], the ALJ's decision became the final decision of the Commissioner. This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court

must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie

case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since her application date, August 4, 2009. [AR at 12.] At step two, the ALJ concluded that plaintiff has the severe impairments of "attention deficit hyperactivity disorder, by history; schizophrenic disorder; bipolar disorder; and borderline intellectual functioning." [Id.] At step three, the ALJ concluded that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] to "perform a full range of work at all exertional levels but with the following nonexertional limitations: simple repetitive tasks in a nonpublic setting." [AR at 13.] Because plaintiff has no past relevant work, the ALJ then proceeded directly to step five of the analysis. [AR at 11.] At step five, the ALJ relied on the testimony of a vocational expert to determine whether plaintiff's nonexertional limitations "erode[d] the occupational base of unskilled work at all exertional levels," and found that even given her limitations, plaintiff would be able to perform the requirements of certain representative occupations. [AR at 16-17, 39.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 16-17.]

/
/
/
/

---

[1]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

# V.

## THE ALJ'S DECISION

Plaintiff contends that: (1) the ALJ failed to properly consider the opinions of plaintiff's treating physicians; and (2) the ALJ failed to fully and fairly develop the record. [Joint Stipulation ("JS") at 2-3.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

### TREATING PHYSICIANS' OPINIONS

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician.

Where a treating physician's opinion does not contradict other medical evidence, an ALJ must provide clear and convincing reasons supported by substantial evidence to discount it. Where a treating physician's opinion conflicts with other medical evidence, an ALJ may afford it less weight only if the ALJ provides specific and legitimate reasons supported by substantial evidence for discounting the opinion. See Lester, 81 F.3d at 830; see also Orn, 495 F.3d at 632-33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citation omitted); Social

Security Ruling[2] 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).

The record shows that plaintiff received treatment from at least two medical and mental health service providers between October 2007 and March 2011. [AR at 257-84, 352-419.] In particular, between October 2007 and July 2008, plaintiff received psychiatric assessments and medication management as well as psychotherapy at Dogon Behavioral Medical Group/Dogon Psychiatric Services ("DBMG"). [AR at 257-84.] Staff at DBMG saw plaintiff every other month between October 2007 and February 2008, and either monthly or bi-monthly between February and July 2008. [AR at 258-69, 271.]

On October 17, 2007, at DBMG, Dr. Samuel E. Dey performed an initial psychiatric evaluation of plaintiff and diagnosed her with bipolar disorder, depression, and attention deficit hyperactivity disorder ("ADHD"), and assigned a current Global Assessment of Functioning ("GAF") score of 50.[3] [AR at 268-69.] In addition to plaintiff's initial evaluation and subsequent periodic examinations by Dr. Dey [AR at 258, 262, 266, 267, 269, 272, 281], plaintiff also had an initial psychotherapy evaluation by a Marriage and Family Therapist Intern on March 5, 2008, where she was diagnosed with major depressive disorder and ADHD, and assigned a GAF score of 52.[4] [AR at 259.]

---

[2] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[3] A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th ed. 2000). A GAF score in the range of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning (e.g., unable to keep a job). DSM-IV, at 32.

[4] A GAF score in the range of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers). DSM-IV, at 34.

Subsequently, from January 2010 until March 2011, plaintiff received medications and periodic mental health assessments at Riverside County Regional Medical Center ("RCRMC"), in the department of psychiatry. [AR at 352-419.] At least three separate physicians examined plaintiff at RCRMC approximately every six weeks from January 27, 2010, until July 9, 2010, and then approximately monthly until March 1, 2011. [AR at 352, 360, 368, 376, 384, 390, 398, 406, 414.]

On October 19, 2009, Dr. Reynaldo Abejuela, a state agency examining physician, evaluated plaintiff and diagnosed her as having "mild depression and mild anxiety," with ADHD and bipolar disorder by history only. [AR at 289.] Dr. Abejuela opined that plaintiff's occupational limitations, social functioning and overall psychiatric limitations are "none to mild," and her prognosis is "fair to good[.]" [AR at 290, 291.] On November 2, 2009, Dr. D.R. Conte, a non-examining physician, stated that plaintiff "can sustain unskilled, nondetailed tasks with adequate pace and persistence," but she "cannot work with the public." [AR at 309.]

In his decision, after reviewing the medical evidence, the ALJ stated that he gave "great weight to the State agency medical consultants' opinions." [AR at 15.] The ALJ also indicated that:

> There is some indication of impaired intellectual functioning as evidenced by [plaintiff]'s participation in special education. Nevertheless, she completed her high school coursework, admitted she could do some reading and writing, and testified she uses the Internet. Dr. Abejuela is a board certified psychiatrist who emphasized [plaintiff]'s none to mild restriction in mental functioning was in the absence of medication treatment.

[AR at 15-16.]

Under the circumstances, the ALJ's evaluation of the medical evidence is not supported by substantial evidence. By failing to consider numerous limitations included in the treating physicians' notes in his assessment of plaintiff's RFC, the ALJ implicitly rejected plaintiff's treating doctors' findings. See Lingenfelter v. Astrue, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007) ("Of course, an ALJ cannot avoid these requirements [to state specific, legitimate reasons] simply by not mentioning the treating physician's opinion and making findings contrary to it."); Salvadore v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990) (implicit rejection of treating physician's opinion cannot

satisfy Administration's obligation to set forth "specific and legitimate reasons"); Smith ex rel. Enge v. Massanari, 139 F.Supp.2d 1128, 1133 (C.D. Cal. 2001) (reliance on one physician's opinion in making a finding, which differs from that of another physician, is an implicit rejection of the latter). Specifically, the ALJ's decision omits any discussion of significant symptoms opined by physicians at RCRMC,[5] including recurrent mood swings; anger; inappropriate eye contact, laughter and mimicking; insomnia; auditory hallucinations; paranoid delusions; an inability to engage in sustained conversation; and an intelligence estimate between borderline and mentally retarded. [See generally AR at 10-17; see AR at 354-55, 362-63, 378-79, 386-87, 400-01, 409.] While these findings clearly translate into functional limitations that would impact plaintiff's ability to work and sustain full-time employment, the ALJ failed to provide any reason, let alone a specific and legitimate one, for rejecting these aspects of the treating physicians' opinions. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) ("The ALJ may not reject the opinion of a treating physician, even if it is contradicted by the opinions of other doctors, without providing 'specific and legitimate reasons' supported by substantial evidence in the record.") (citation omitted); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1988) ("We find nothing in the ALJ's decision which indicates why [the treating physician's] medical findings, reports, and opinion were disregarded. Because the ALJ did not state reasons based on substantial evidence, we reverse the decision to deny benefits.").

The ALJ also failed to give any weight to, or consider the implications of, plaintiff's assigned GAF scores by physicians at both DBMG and RCRMC, including multiple scores in the 40-50 range. [AR at 268-69 (GAF score of 50 assigned Oct. 17, 2007); 259 (GAF score of 52 assigned Mar. 5, 2008); 415 (GAF score of 50 assigned Jan. 27, 2010); 409 (GAF score of 50 assigned

---

[5] The Court notes that, individually, no single RCRMC physician met with plaintiff more than three times. For purposes of determining what weight to give the opinions of physicians in such situations, this Circuit has held that the medical opinions of members of a "treatment team" with a sustained relationship with a plaintiff over time may be accorded treating physician status. See Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1041 (9th Cir. 2003) (requiring ALJ to "explore" whether a physician's treatment relationship, "individually and as a representative of a treatment team, was consistent with accepted medical practice for the type of treatment required for [patient's] medical condition.")

Mar. 19, 2010); 400-01 (GAF score of 50 assigned Apr. 23, 2010); 392-93 (GAF score of 45 assigned June 7, 2010); 386-87 (GAF score of 45 assigned July 9, 2010); 378-79 (GAF score of 60 assigned Nov. 5, 2010); 354-55 (GAF score of 40[6] assigned Mar. 1, 2011).] While "GAF scores do not dispositively assess a plaintiff's ability to work" (Garcia v. Astrue, 2011 WL 4479843, at *5 (E.D. Cal. Sept. 26, 2011)), they "are nonetheless relevant." Graham v. Astrue, 385 Fed. Appx. 704, 705 (9th Cir. 2010) (unpublished disposition). Here, plaintiff's GAF scores are particularly relevant because they were provided over a period of several years by multiple treating doctors and frequently reflect assessments indicating moderate to major limitations. See Garcia, 2011 WL 4479843, at *5 ("[M]ultiple GAFs assessed over a period of time, conducted by the same or different examiner, are more instructive than the singular snapshot in obtaining a picture of [] mental/emotional limitations."). Under the circumstances, by failing to discuss the implication of plaintiff's multiple low GAF scores, it appears that the ALJ impermissibly disregarded those portions of the treatment record that did not favor his ultimate conclusion. See generally AR at 13-17; see Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) ("[ALJ's] findings were unsupported by substantial evidence based on the record as a whole" when "[i]n essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports [and h]is paraphrasing of record material is not entirely accurate regarding the content or tone of the record."); see Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the [Commissioner] to make findings . . . and to weigh conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.") (internal citation omitted).

Moreover, to the extent defendant argues that the absence of treating physicians' functional assessments renders those physicians' notes "of limited value" [JS at 9], defendant's contention

---

[6] A GAF score in the range of 31-40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." DSM-IV, at 32.

is unpersuasive. While plaintiff's treating physicians' notes may not provide an explicit functional assessment, as discussed above, there are many instances where they document symptoms that clearly implicate functional limitations pertinent to plaintiff's ability to sustain full-time employment. [See, e.g., AR at 354-55 (treatment notes indicating that plaintiff is "unable to engage in sustained conversation," and has paranoid delusions, an intelligence estimate between "borderline" and mental retardation, and a current GAF score of 40).] See Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) (requiring ALJ to read treating physician's treatment notes "in context of the overall diagnostic picture he draws").

Additionally, based on the length of the treatment relationships between plaintiff and the physicians at DBMG and RCRMC, these physicians had the broadest range of knowledge regarding plaintiff's condition, which is supported by the treatment records. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Although defendant is correct that the Commissioner is not required to discuss all of the evidence presented in plaintiff's treatment record [JS at 9] (see Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), he is required to "explain why significant probative evidence has been rejected." Id. at 1395 (citation omitted). Here, because the opinions of plaintiff's treating physicians represent a "detailed, longitudinal picture" of plaintiff's medical impairments, they are entitled to significant weight and should have been addressed explicitly by the ALJ in his decision. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see id. at §§ 404.1527(c)(2)(i), (ii), 416.927(c)(2)(i), (ii) (weight accorded to a treating physician's opinion dependent on length of the treatment relationship, frequency of visits, and nature and extent of treatment received).

In sum, the ALJ failed to provide specific and legitimate reasons for rejecting plaintiff's treating physicians' opinions. As a result, the ALJ's decision is not supported by substantial evidence and remand is required.[7]

---

[7] In his second contention of error, plaintiff argues that the ALJ failed to fully and fairly develop the record. [JS at 11-13.] On remand, the ALJ shall permit plaintiff to supplement the medical record with any additional evidence from her treating physicians. Moreover, should the ALJ determine that the evidence from plaintiff's treating doctors is ambiguous or inadequate, he
(continued...)

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is warranted in order for the ALJ to reconsider the opinions of plaintiff's treating physicians at DBMG and RCRMC. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

*/s/ Paul L. Abrams*

DATED: October 10, 2013

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[7](...continued)
shall "conduct an appropriate inquiry" to resolve the ambiguity or complete the record. Smolen, 80 F.3d at 1288 (holding that ALJ has a duty to resolve such ambiguity, and providing examples of steps ALJ may take in order to do so, including subpoenaing physicians, submitting further questions to physicians, or continuing the hearing in order to augment the record).